UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------
JAMES MARTIN B., IV,

                    Plaintiff,       <u>DECISION AND ORDER</u>
                                         1:23-cv-05170-GRJ
     v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

In August of 2020, Plaintiff James Martin B., IV[1] applied for Disability

Insurance Benefits and Supplemental Security Income Benefits under the

Social Security Act. The Commissioner of Social Security denied the

applications.  Plaintiff, represented by Dennis Kenny Law, Josephine

Gottesman, Esq., of counsel, commenced this action seeking judicial

review of the Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g)

and 1383 (c)(3).  The parties consented to the jurisdiction of a United

States Magistrate Judge. (Docket No. 5).

This case was referred to the undersigned on June 13, 2024.

Presently pending is Plaintiff's Motion for Remand for Further

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

Administrative Proceedings. (Docket No. 11). For the following reasons,

Plaintiff's motion is due to be granted and this case is remanded for further

proceedings.

## I. BACKGROUND

### A.    Administrative Proceedings

Plaintiff applied for benefits on August 21, 2020, alleging disability

beginning November 24, 2018. (T at 14).[2]  Plaintiff's application was denied

initially and on reconsideration.  He requested a hearing before an

Administrative Law Judge ("ALJ").  A hearing was held on December 14,

2021, before ALJ Vincent Cascio. (T at 30-60). Plaintiff appeared with an

attorney and testified. (T at 38-53). The ALJ also received testimony from

Michael Smith, a vocational expert. (T at 54-59).

### B.    ALJ's Decision

On January 19, 2022, the ALJ issued a decision denying the

applications for benefits. (T at 11-29).  The ALJ found that Plaintiff had not

engaged in substantial gainful activity since November 24, 2018 (the

alleged onset date) and met the insured status requirements of the Social

Security Act through December 31, 2018 (the date last insured). (T at 16).

The ALJ concluded that Plaintiff's unspecified depressive disorder,

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 9.

unspecified anxiety disorder, post-traumatic stress disorder (PTSD), panic

disorder with panic attacks without agoraphobia, unspecified bipolar

disorder, specific learning disorder, opiate use disorder (in sustained

remission), attention deficit hyperactivity disorder, history of schizophrenia,

mild scoliosis, hypertension, and history of tachycardia were severe

impairments as defined under the Social Security Act. (T at 16-17).

However, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled one of the listed

impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 17).

At step four of the sequential analysis the ALJ determined that

Plaintiff retained the residual functional capacity ("RFC") to perform light

work, as defined in 20 CFR 404.1567 (b), with the following limitations: he

must never climb ladders, ropes, or scaffolds and must avoid unprotected

heights and hazardous machinery; he can understand, remember, and

carry out simple, routine, and repetitive work-related tasks, involving no

more than occasional contact with the public, co-workers and supervisors;

and is limited to work in a low stress job requiring only occasional decision

making. (T at 19).

The ALJ concluded that Plaintiff could not perform his past relevant

work as a retail salesclerk. (T at 23).  However, considering Plaintiff's age

(35 on the alleged onset date), education (at least high school), work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 24).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between November 24, 2018 (the alleged onset date) and January 19, 2022 (the date of the ALJ's decision). (T at 25).  On April 21, 2023, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-6).

C.    *Procedural History*

Plaintiff commenced this action, by and through his counsel, by filing a Complaint on June 19, 2023. (Docket No. 1).  On September 18, 2023, Plaintiff filed a motion for remand, supported by a memorandum of law. (Docket Nos. 11, 12).  The Commissioner interposed a brief in opposition to the motion and in support of the denial of benefits on October 13, 2023. (Docket No. 13). On October 27, 2023, Plaintiff submitted a reply memorandum of law in further support of his motion. (Docket No. 21).

## II.  APPLICABLE LAW

*A.     Standard of Review*

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted.  *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

B.   *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without

considering vocational factors such as age, education, and
work experience.

4. If the impairment is not "listed" in the regulations, the
Commissioner then asks whether, despite the claimant's severe
impairment, he or she has residual functional capacity to
perform his or her past work.

5. If the claimant is unable to perform his or her past work, the
Commissioner then determines whether there is other work
which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec*., 994 F. Supp. 2d 496, 503

(S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v),

416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the

burden shifts to the Commissioner at step five. *See Green-Younger v.*

*Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner

determines whether claimant can perform work that exists in significant

numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101,

103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

### III. DISCUSSION

As summarized above, the ALJ in this case concluded that Plaintiff

suffered from several severe mental impairments (unspecified depressive

disorder, unspecified anxiety disorder, PTSD, panic disorder with panic

attacks without agoraphobia, unspecified bipolar disorder, specific learning

disorder, ADHD, history of schizophrenia), but retained the RFC to perform a reduced range of light work. (T at 16, 19).

The Court finds that the ALJ erred by reaching this conclusion without seeking an assessment from at least one of Plaintiff's treating mental health providers.

Social Security proceedings are non-adversarial and the ALJ is obliged "to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111, 147 L. Ed. 2d 80, 120 S. Ct. 2080 (2000) (citation omitted). This obligation applies even if the claimant is represented by counsel. *See, e.g., Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999)(citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)).

The ALJ's duty to develop the record has been described as a "bedrock principle of Social Security law." *Batista v. Barnhart*, 326 F.Supp.2d 345, 353 (E.D.N.Y.2004)(citing *Brown v. Apfel*, 174 F.3d 59 (2d Cir.1999)).

Further, "an ALJ has a heightened duty to develop the record when a claimant asserts a mental impairment." *Gabrielsen v. Colvin,* No. 12-CV-5694 KMK PED, 2015 WL 4597548, at *4-5 (S.D.N.Y. July 30, 2015)(collecting cases).

"This 'heightened duty' derives from the fact that a claimant's mental illness may greatly impede an evaluator's assessment of a claimant's ability to function in the workplace, thus necessitating a more thorough review." *Piscope v. Colvin*, 201 F. Supp. 3d 456, 462-63 (S.D.N.Y. 2016).

Underpinning the heightening of the ALJ's duty is a recognition that the records and opinions of treating providers are particularly probative in claims involving mental health.  *See Flynn v. Comm'r of SSA*, 729 F. App'x 119, 122 (2d Cir. 2018)("The treatment provider's perspective would seem all the more important in cases involving mental health, which are not susceptible to clear records such as [x-rays] or MRIs. Rather, they depend almost exclusively on less discretely measurable factors, like what the patient says in consultations."); *see also Marinez v. Comm'r of Soc. Sec.,* 269 F. Supp. 3d 207, 216 (S.D.N.Y. 2017) (noting that treating sources "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations.") (citing 20 C.F.R. § 416.927(c)(2)).

Although the Commissioner no longer applies the "treating physician's rule," the duty to develop the record, which includes re-

contacting treating physicians when needed to afford the claimant a full and fair hearing based on an adequately developed record, applies to claims governed by the new medical opinion regulations. *See, e.g., Snoke v. Comm'r of Soc. Sec*., No. 22-CV-3708 (AMD), 2024 WL 1072184, at *9 (E.D.N.Y. Mar. 12, 2024); *Fintz v. Kijakazi*, No. 22-CV-00337(KAM), 2023 WL 2974132, at *7 (E.D.N.Y. Apr. 15, 2023); *Cheryl W. v. Kijakazi*, No. 3:22-CV-1476 (VAB), 2024 WL 1012923, at *5 (D. Conn. Mar. 8, 2024); *Daniela B. v. Kijakazi*, 675 F. Supp. 3d 305, 316 (E.D.N.Y. 2023); *see also Ramos v. Comm'r of Soc. Sec*., No. 20-CV-9436 (OTW), 2023 WL 3380660, at *2 (S.D.N.Y. May 11, 2023).

Here, the record documents Plaintiff's extensive treatment for multiple mental impairments, including a psychiatric hospitalization as well as ongoing significant symptoms, including severe anxiety, social withdrawal, depression, difficulty attending to hygiene and personal care, and panic attacks. (T at 417-75, 491-517, 518-610, 613-16, 739-83, 784-796, 815-17, 858-98, 984-89).

The ALJ reviewed the treatment record, noted that Plaintiff experienced periods of stability and was reported to be generally cooperative and compliant during mental health visits. (T at 20-22).

Given Plaintiff's extensive history of significant psychiatric symptoms, however, it was error for the ALJ to rely on his lay evaluation of the record without seeking an assessment from one or more of Plaintiff's treating providers as to the impact of his impairments on his ability to meet the mental demands of substantial gainful activity.  *See Skartados v. Comm'r of Soc. Sec.*, No. 20-CV-3909 (PKC), 2022 WL 409701, at *4 (E.D.N.Y. Feb. 10, 2022)("[A]n ALJ must attempt to obtain medical opinions—not just medical records—from a claimant's treating physicians.")(citing *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941 (RWL), 2021 WL 3475625, at *10–11 (S.D.N.Y. Aug. 6, 2021) (collecting cases)).

"Medical opinions from treating physicians are critical because, beyond simply diagnosing the patient's impairment, they relate the impairment to the patient's functional capacity." *Skartados*, 2022 WL 409701, at *4 (citing *Guillen v. Berryhill*, 697 F. App'x 107, 109 (2d Cir. 2017) ("The medical records discuss her illnesses and suggest treatment for them, but offer no insight into how her impairments affect or do not affect her ability to work, or her ability to undertake her activities of everyday life.")).

"It is not sufficient for the ALJ simply to secure raw data from the treating physician. What is valuable about the perspective of the treating

physician—what distinguishes him from the examining physician and from the ALJ—is his opportunity to develop an informed *opinion* as to the … status of a patient." *Robins v. Astrue*, No. CV-10-3281 FB, 2011 WL 2446371, at *4 (E.D.N.Y. June 15, 2011)(quoting *Peed v. Sullivan*, 778 F. Supp. 1241, 1246 (E.D.N.Y.1991)(emphasis original).

The Commissioner points to an opinion provided by Dr. Alison Murphy, a consultative examiner, and argues that this assessment, along with the ALJ's interpretation of the treatment record, is sufficient to sustain the decision.  The Court disagrees.

In January of 2021, Dr. Murphy diagnosed unspecified depressive disorder, unspecified anxiety disorder, PTSD, panic attacks without agoraphobia, unspecified bipolar disorder, and specific learning disorder. (T at 822).  She opined that Plaintiff had no limitation in his ability to understand, remember, or apply simple or complex directions; moderate impairment with respect to using reason and judgment to make work-related decisions; moderate limitation in interacting with others; moderate impairment as to concentration and pace; moderate limitation in sustaining an ordinary routine and regular attendance; and moderate impairment with respect to regulating emotions, controlling behavior, and maintaining well-being. (T at 822).

The ALJ found this opinion persuasive and relied on it in formulating his RFC determination. (T at 23).

This Court recognizes that the Second Circuit has held that absence of a medical source statement from a treating physician does not require remand where "the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33–34 (2d Cir.2013). Nonetheless, the Second Circuit has likewise long cautioned that "ALJs should not rely heavily on the findings of consultative physicians after a single examination." *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013)(citing *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990)).

Moreover, "[t]his concern is even more pronounced in the context of mental illness where … a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019).

Where, as here, the record documents extensive treatment and significant symptoms, it is critical to obtain an assessment from a treating mental health provider -- the medical professional most able to provide a detailed, longitudinal picture of Plaintiff's impairments, with "a unique perspective to the medical evidence that cannot be obtained from the

objective medical findings alone or from reports of individual examinations."
*Marinez v. Comm'r of Soc. Sec.*, 269 F. Supp. 3d 207, 216 (S.D.N.Y. 2017)
(citing 20 C.F.R. § 416.927(c)(2)).

Notably, the ALJ did not find the opinions of the non-examining State
Agency review physicians fully persuasive.  (T at 22).  Dr. L. Hoffman
assessed moderate impairment in Plaintiff's ability to meet the mental
demands of basic work activity, including his capacity to sustain a routine,
maintain attendance, and interact with others. (T at 81-85).  With respect to
Plaintiff's application for SSI benefits, Dr. C. Walker assessed moderate
impairment in Plaintiff's ability to understand, remember, or apply
information; interact with others; concentration, persist, or maintain pace;
and adapt/manage himself. (T at 98, 102-107).  Dr. Walker found that the
record did not contain sufficient evidence to assess Plaintiff's mental
limitations with respect to his application for disability insurance benefits. (T
at 119).

In sum, the medical opinion evidence established the presence of at
least moderate work-related impairments arising from Plaintiff's mental
impairments.  In addition, the treatment record is extensive and includes
psychiatric hospitalizations and significant symptoms very likely to interfere
with Plaintiff's ability to maintain competitive, remunerative work on a

sustained basis.  Under these circumstances, it was incumbent upon the ALJ to ensure full and fair development of the record, which would necessarily include an effort to obtain an assessment from at least one of Plaintiff's treating mental health providers.

A remand is required for further development of the record.[3]

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Remand (Docket No. 11) is GRANTED, and this case is remanded for further administrative proceedings consistent with this Decision and Order.  The Clerk is directed to enter final judgment in favor of Plaintiff and then close the file.


Dated: June 25, 2024                    *s/ Gary R. Jones*
                                        GARY R. JONES
                                        United States Magistrate Judge

---

[3] Plaintiff also challenges the ALJ's step five analysis.  This Court need not address this argument as the ALJ's analysis will necessarily need to be revisited on remand after further development of the record.